
George C. Paine, II
US Bankruptcy Judge
Dated: 11/16/09



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

In Re:

SANTA FE HOLDING COMPANY, INC. et al.,
    Debtors.[1]

CASE NO. 09-07856
Chapter 11
Hon. George C. Paine, II

_____

**MEMORANDUM**
_____

This matter is before the court on First Interim Application for Compensation for the Period August 3, 2009 through October 11, 2009 for MorrisAnderson & Associates, Ltd., and the United States Trustee's objection thereto. MorrisAnderson is the debtors' chief restructuring officer who is assisting in the administration of the debtors' estates and was instrumental in the successful closing of the 11 U.S.C. § 363 sale of seventeen of the debtors' twenty-seven restaurants as going concerns.

---

[1] Santa Fe Cattle Company, Inc. (09-07857), NRG, LLC (09-07858), Tennessee Santa Fe, LLC (09-07859), Santa Fe of Alabama, LLC (09-07860), Southern Restaurant Group of Franklin, LLC (09-07861), Santa Fe of Tuscaloosa, Alabama, LLC (09-07862), Santa Fe of Gadsden, Alabama, LLC (09-07863), Santa Fe of Troy, Alabama, LLC (09-07864), Santa Fe of Rome, Georgia, LLC (09-07865), Santa Fe of Shelbyville, Indiana, LLC (09-07866), Santa Fe of Columbus, Mississippi, LLC (09-07867), Santa Fe of Ardmore, Oklahoma, LLC (09-07868), Santa Fe of Broken Arrow, Oklahoma, LLC (09-07869), Santa Fe Cattle Company, Inc. (Tennessee corporation) (09-07870), Santa Fe of McComb, Mississippi, LLC (09-07871), Santa Fe of Enterprise, Alabama, LLC (09-07872), Santa Fe of Albertville, Alabama, LLC (09-07873), Santa Fe of Ada, Oklahoma, LLC (09-07874), Santa Fe of Owens Crossroads, Alabama, LLC (09-07875), Santa Fe of Bixby, Oklahoma, LLC (09-07876), Santa Fe of Lawton, Oklahoma, LLC (09-07877), and Santa Fe of Glenpool, Oklahoma, LLC (09-07878) are jointly administered with Santa Fe Holding Company, Inc. (09-07856).

The United States Trustee objects to the portion in the MorrisAnderson Interim Fee Application that seeks a "success fee." For the reasons cited herein, the court grants the Interim Fee Application of MorrisAnderson in its entirety and overrules the United States Trustee's objection.

The Application and Supplemental Application and Order approving the employment of MorrisAnderson as Chief Restructuring Officer provided for the following fee structure:

> MorrisAnderson with Mr. Bagley will be paid $15,000 per week (based on a 45 hour work week). Mr. Bagley's fees will be prorated if less than 45 hours per work are worked at the normal hourly rates. Other MorrisAnderson consultants will be utilized as necessary; however, any additional consulting services will be limited to $5,000.00 during any one week.

The Supplemental Application also provided that the Debtors agreed that MorrisAnderson would receive a $60,000.00 "success fee" after the sale of a majority of the debtors' assets had closed.

MorrisAnderson's First Interim Fee Application seeks entry of an order granting a first interim allowance of compensation in the total sum of $288,369.93 representing $208,057.50 for services performed, $60,000.00 for a success fee and $20,312.43 for actual and necessary out-of-pocket expenses. MorrisAnderson billed David M. Bagley's services for work performed above the fifteen hour work week at a standard rate of $375 per hour and Jason Paru at $275 per hour. Exclusive of the success fee, the United States Trustee does not object to compensation to MorrisAnderson in the amount of $208,056.57, but argues that MorrisAnderson failed to demonstrate entitlement to the $60,000.00 success fee.

The United States Trustee asserts that MorrisAnderson was not employed

under 11 U.S.C. § 328 where the success was in essence "preapproved," but was instead employed pursuant to 11 U.S.C. § 330 and 331 requiring MorrisAnderston to demonstrate entitlement to the success fee. Judge Arthur Gonzales in **In re XO Communications, Inc.,** 398 B.R. 106 (Bankr. S.D.N.Y. 2008) provided an excellent analysis of §§328 and 330 in this context:

> Once in bankruptcy,[a] prospective analysis usually applies if the financial advisor's compensation is sought to be approved under 11 U.S.C. § 328 at the outset of its actual engagement. A determination of reasonableness is made at the time of retention based upon the available information. Pursuant to section 328, a court is asked to approve the reasonableness of a transaction fee arrangement based upon the financial advisor accomplishing a certain goal. Further, after the reasonableness prong is determined, there is no opportunity to revisit that determination unless it proves "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). That is a very difficult standard to meet and it is not often that these fee arrangements are adjusted. **In re XO Communications, Inc.**, 323 B.R. 330, 339 (Bankr.S.D.N.Y.2005) (citation omitted). The section 328 retention is similar to the pre-petition prospective approach to setting compensation, in that the court reviews the terms and conditions of compensation to see if they are reasonable from a prospective viewpoint. Thus, whether retained outside of bankruptcy or under a section 328 prospective analysis, the typical engagement would preclude an examination of, among other things, the impact the financial advisor had in bringing about the transaction; and the parties agree to assume the attendant risks involved as to the potential for underpayment or overpayment for the services rendered.
>
> . . .
>
> In the context of a transaction fee or success fee, however, a successful result is inherent in the fee structure. Any engagement agreement would typically require that there must be a successful result before the fee may be sought. Hence, in the context of a financial restructuring, the debt being

restructured is usually a condition precedent to any right to request a transaction fee. Further, if the restructuring occurs, unless the entity obtained approval under section 328 as to the reasonableness of the compensation sought for the engagement, the reasonableness of the professional's compensation is evaluated under section 330.

**In re XO Communications,** 398 B.R at 111-112. Judge Gonzales further explained how to examine a success fee under section 330:

Where the services rendered are reviewed under 11 U.S.C. § 330(a), the court may allow "reasonable compensation for actual necessary services." This analysis is also market driven, however, it is no longer from a prospective view point. For the court examines the reasonableness based upon the facts that existed when the services were rendered. Moreover, the court may "award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2). In determining the amount of reasonable compensation to be awarded to such professional person, section 330(a)(2) provides that "the court shall consider the nature, the extent, and the value of such services." The factors considered in making the determination include-

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary

compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(2).

In considering a transaction fee, courts recognize that certain of these factors do not apply, such as "time spent" or the "rates charged." **In re Intelogic Trace, Inc**., 188 B.R. 557, 559 (Bankr. W.D.Tex. 1995). Rather, relevant factors to consider in assessing a financial advisor's transaction fee are (i) whether the financial advisor's services were necessary and beneficial to the estates at the time they were rendered, and (ii) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases outside of bankruptcy.

When a court conducts a section 330 review of fees that only are compensable if a specific result is achieved, it must find that the work was beneficial when rendered and of necessity must look to the nexus between the work done and the results achieved. Thus, unlike the typical section 328 situation where the tasks to be performed and the results to be achieved are examined prospectively because usually neither the tasks nor the results have occurred at that stage, the "reasonable standard" of section 330 allows a court to view, on an ongoing basis, the nexus between the tasks performed and the results achieved.

**In re XO Communications, Inc**. 398 B.R. 106, 111 -114 (Bankr. S.D.N.Y., 2008).

The burden of proof is on MorrisAnderson to show they are entitled to the success fee pursuant to section 330. **In re William,** 378 B.R. 811 (Bankr. E.D. Mich. 2007). To meet this burden, MorrisAnderson relied upon the testimony of David Bagley, Managing Director of MorrisAnderson and Chief Restructuring Officer for the debtors.

Mr. Bagley testified that he was the CRO of the Santa Fe entities. He was contacted by the debtors at the end of July to help with in administering the estate. The Agreement with MorrisAnderson provided for a weekly billings cap of $11,000 which represented a discounted fee for MorrisAnderson. The parties also agreed to the capped fees and reduced rate because cash flow in this case was very questionable. The parties changed their agreement because the case went from a possible reorganization to a 363 sale focus. The new weekly fee was $15,000 per week, and if a sale was completed, MorrisAnderson would be paid a $60,000 success fee subject to court approval.

Mr. Bagley's testified that after MorrisAnderson came on board, the debtors realized that the business was losing $400,000 per month, and the case needed to look for a quick sale in order to keep the businesses operating. MorrisAnderson, within a month of its hiring, assisted the debtors getting 17 of the 27 operating restaurants sold by the end of September, 2009. Mr. Bagley was the point person for the sale process, and conducted the auction where the only qualified bidder was DBMC Investments, L.L.C., who became the purchaser of most of the restaurants. The DIP lender required closing of the sale by October 15, 2009. Because of MorrisAnderson's work in this case, the restaurants were sold; the DIP lender agreed to provide the funding to the debtors to get to the sale closing; over 1700

employees at the restaurants kept their jobs; landlords cure amounts were negotiated and settled; and claims against the estate were drastically reduced (potentially producing an $80,000,000.00 value).

Mr. Bagley agreed to a 45 hour work week with a weekly cap of $15,000, resulting in a reduced hourly rate ($333 verus $375). The success fee, if awarded would mean that Mr. Bagley's blended hourly rate for all hours spent (but not billed) on this case would be $323-$356, still less than his standard billing rate. His testimony was that even with the addition of the success fee, the amount sought by MorrisAnderson in light of the results obtained is reasonable.

Mr. Bagley was an excellent witness, and his testimony was uncontradicted. Without MorrisAnderson, this estate would have "fallen over and died" (Mr. Bagley's characterization) due to the cash losses. MorrisAnderson took this engagement at reduced rates, and debtors' estate benefitted immeasurably due to their efforts. In order to award the success fee, MorrisAnderson needed to show that (i) their services were necessary and beneficial to the estates at the time they were rendered, and (ii) the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases outside of bankruptcy.

Mr. Bagley's testimony established both prongs. As to necessity, without MorrisAnderson's services, it is likely this estate would have cratered in on itself. Mr. Bagley's testimony only hit the highlights of how MorrisAnderson's benefitted this estate (in addition to those benefits discussed already): (1) MorrisAnderson helped negotiate that all payroll and state taxes were paid for the debtors' entire estate whether for a sold location or not; (2) $68 million in leases were assumed; (3) noteholders were paid in full; landlords were paid in cash or had claims satisfied; (4) vendors have continuing business that they would not have had; and (5) 1700 jobs were saved by the sales. For a company that was losing $400,000 per month in cash and DIP lending expiring in a matter of weeks, success appeared unlikey. The court finds that the results obtained by MorrisAnderson were exceptional.

Finally, the court finds that the amount of compensation sought by MorrisAnderson is reasonable. The debtors' estate benefitted from MorrisAnderson's expertise at the reduced rate, and the sale process benefitted most every interested party.[2]

For all the reasons stated herein, the court OVERRULES the United States

---

[2] Although numerous objections were filed to the proposed sale, with MorrisAnderson's assistance all were resolved except one, which was overruled by the court.

Trustee's objection to the First Interim Application for Compensation for the Period August 3, 2009 through October 11, 2009 for MorrisAnderson & Associates, Ltd., and GRANTS the application in the full amount sought, including the $60,000.00 success fee.[3] The court instructs counsel for the debtors to prepare an order not inconsistent with this court's decision within ten (10) days of entry of this decision.

**THIS MEMORANDUM WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.**

---

[3] The court notes that the payment of the $60,000 success fee is being paid from the agreed carveout of funds provided by the DIP lender, and does not in any way diminish a return to creditors. Mr. Bagley testified that if MorrisAnderson was not paid the success fee, the money would revert back to the DIP lender.

9-U.S. Bankruptcy Court, M.D. Tenn.

This Order has Been electronically signed.  The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:09-bk-07856    Doc 551    Filed 11/16/09    Entered 11/16/09 15:56:30    Desc Main
Document      Page 9 of 9